Filed 8/17/21  Ehdaie v. Stewart CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HEATHER ROXANNA EHDAIE, | D074092 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2016-00001484-CU-BC-NC) |
| GARY ALAN STEWART, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed.

David E. Allen, Jr. for Plaintiff and Appellant.

The Law Office of Ian Matthew Pancer and Ian Matthew Pancer for Defendant and Respondent.

I.

INTRODUCTION

After living together intermittently over a period of seven years, Heather Ehdaie and Gary Stewart ended their relationship when Stewart committed an act of domestic violence against Ehdaie.  Ehdaie then sued

Stewart, alleging numerous contract causes of action, including claims based on Stewart's alleged promise to add Ehdaie to the title to certain real property that Stewart owned. Ehdaie also brought causes of action based on Stewart's physical and mental abuse of Ehdaie, including assault, battery, and intentional infliction of emotional distress. After an unreported bench trial, the trial court issued a judgment in favor of Stewart on Ehdaie's contract causes of action and in favor of Ehdaie on her causes of action for assault, battery, and intentional infliction of emotional distress. The trial court awarded Ehdaie $25,000 in damages, consisting of $12,500 in compensatory damages and $12,500 in punitive damages.

Ehdaie appeals, raising numerous claims of error. Ehdaie contends that the trial court erred in excluding evidence of Stewart's alleged abuse of three other women. Ehdaie also maintains that the trial court erred in quashing a subpoena requiring Stewart's appearance as a witness at the trial. Ehdaie further claims that the trial court "set improper standards" when considering her contract causes of action,[1] "displayed bias" against her, and "improperly handled" proceedings related to the preparation of a settled statement while this appeal was pending. Finally, Ehdaie contends that the trial court's compensatory and punitive damages awards are inadequate.

We conclude that the trial court did not abuse its discretion in excluding evidence of Stewart's alleged abuse of other women. We also conclude that, even assuming the trial court erred in quashing the subpoena requiring Stewart's appearance at trial, Ehdaie fails to establish any

[1] In her brief, Ehdaie refers to these as "property claims." We understand Ehdaie to be referring to all of her causes of action that were based on alleged promises by Stewart to give Ehdaie an interest in certain real and personal property. For ease of reference, we refer to these as "contract causes of action," because they are based in alleged contractual promises.

prejudice from the presumed error.  Ehdaie also has not demonstrated that the court set "improper standards" with respect to her contract causes of action, "displayed bias" or "improperly handled" the trial court's settled statement.  Finally, Ehdaie's claims for inadequate damages are barred by her failure to move for a new trial on this ground in the trial court. Accordingly, we affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Factual background*[2]

Ehdaie and Stewart met in approximately August 2008, when Ehdaie was 21 years old and Stewart was 49.  At that time, Ehdaie was living at her father's house in Rancho Santa Fe.  Ehdaie was not employed, and her father supported her financially.  Ehdaie's father was very strict and Ehdaie was subject to a curfew.

Within approximately four weeks of their meeting, Ehdaie moved into Stewart's house.  The parties talked about marriage from the beginning of their relationship.  However, they never made any concrete plans to marry.

During their relationship, Ehdaie would often leave Stewart for periods of time, sometimes for many months, and stay elsewhere.  However, when Ehdaie was away, she left many of her belongings in the residence that she shared with Stewart.  It appears that Ehdaie lived at the Stewart residence for the majority of the time from 2008 until 2015.

The trial court described evidence pertaining to the alleged contractual agreements at issue in the case as follows:

---

[2]    As noted in part I, *ante*, the trial was unreported.  We base our factual background on the trial court's statement of decision and the settled statement.

3

"Ms. Ehdaie testified that she felt financially insecure with Mr. Stewart, that several times in 2010 and 2011 she threatened to break off their relationship, and that, in conjunction with those threats, asked Mr. Stewart to make commitments to her. She asked Mr. Stewart to put her on the 'deed' to the subject property. On two occasions, Mr. Stewart wrote notes indicating that he 'wanted' to include Ms. Ehdaie on the 'title' to the subject property. On or about December 11, 2010, Mr. Stewart wrote out a note indicating in part[,] 'I want to add your name to the title of this home so you will feel more comfortable.' On October 8, 2011, Mr. Stewart wrote out a note providing in part, 'I want to include Heather R. Ehdaie on the house title at [property address].' On the same date, October 8, 2011, Mr. Stewart wrote a separate note indicating in part, 'I don't want you to work. We will agree on an amount after I get my taxes sorted out. I will support you the rest of your life.' Ms. Ehdaie admitted on cross examination that she did not understand Mr. Stewart to mean he would continue supporting her in the event their relationship ended, and Ms. Ehdaie admitted that Mr. Stewart made no commitment at any time to support her in the event they ceased to be in a relationship. Moreover, Ms. Ehdaie admitted on cross examination that Mr. Stewart never made any commitments regarding her entitlement to any ownership interest in the subject property in the event the relationship ended."[3]

On at least three occasions during the course of the parties' "on and off" relationship, Ehdaie learned that Stewart had not put her name on the title to his house, and that he had not taken any steps to provide her with a half interest in the house.

During the course of their relationship, both parties had substance abuse problems. In addition, Stewart engaged in bizarre behavior and suffered from delusions; on one occasion, he told various neighbors that

---

[3] We quote here from the trial court's settled statement.

4

another neighbor had been wheeling Ehdaie around the neighborhood in a wheelchair, "pimping her out . . . ."

Stewart pulled Ehdaie's arm, injuring her shoulder, in 2009. On October 4, 2015, Stewart again pulled Ehdaie's arm, reinjuring her shoulder. Stewart was arrested and eventually pled guilty to a domestic violence charge based on the October 4, 2015 incident.

B. *Procedural background*

1. *The operative complaint*

In March 2017, Ehdaie filed the operative second amended complaint against Stewart.

In her complaint, Ehdaie alleged that she had been involved in a seven-year romantic relationship with Stewart. Ehdaie claimed that Stewart had made various promises to her throughout their relationship, including entering into a contract to add her name to the deed to real property that Stewart owned. Ehdaie also claimed that she and Stewart had agreed that "in the event of the dissolution of their relationship by death, separation or otherwise, that all of . . . Stewart's property . . . would be divided equally." Ehdaie further alleged that Stewart never intended to follow through on the promises and that he had fraudulently made such promises to her to induce her to remain with him.

Ehdaie also alleged that Stewart had committed domestic violence against her, including during the October 4, 2015 incident and that, in November 2015, Stewart pled guilty to committing a battery on her.

Ehdaie brought causes of action for breach of oral contract (first cause of action), breach of written contract (second cause of action), breach of implied in fact contract (third cause of action), assault (fourth cause of action), battery (fifth cause of action), fraud (sixth cause of action),

5

declaratory relief (seventh cause of action), specific performance (eighth cause of action), intentional infliction of emotional distress (ninth cause of action), partition by forced sale of real property (tenth cause of action), and unjust enrichment (eleventh cause of action).

2. *The trial*

The trial court held an unreported bench trial of the action in December 2017.

3. *The trial court's statement of decision*

The trial court issued a statement of decision in February 2018. In its statement of decision, the trial court ruled that Ehdaie had not proven the existence of any contract between the parties. The trial court reasoned in part:

> "There is little credible evidence that the parties in this case entered into any actual contract, express, implied, written, or oral. . . . Although [Ehdaie] may have believed she had a contract with Stewart, it was not objectively reasonable for her to believe this. . . . Because [Ehdaie] has not proven the existence of a contract, the Court finds in favor of [Stewart] on [Ehdaie's] First, Third, Eighth, Tenth, and Eleventh causes of action which are all based on breach of contract."[4]

The trial court also ruled against Ehdaie on her fraud cause of action, reasoning in part that Stewart had not promised to put Ehdaie on the title to real property. In addition, the trial court ruled against Ehdaie with respect

---

4    Although not expressly referred to in the trial court's statement of decision, the trial court implicitly ruled in favor of Stewart on Ehdaie's second cause of action for breach of written contract when the court determined that Ehdaie had not "proven the existence of a contract."

to her claim for declaratory relief to the extent that the claim was based on Ehdaie's claimed interest in Stewart's real property.[5]

With respect to Ehdaie's causes of action for assault, battery, and infliction of emotional distress, the court ruled:

> "[Ehdaie] alleged that on October 4, 2015, [Stewart] pulled her arm injuring her right shoulder for which she sought medical attention. [Stewart] did not contest that this occurred. The Court finds that [Stewart] committed this act intentionally. The Court also finds by clear and convincing evidence that [Stewart] committed this act with malice and oppression.
>
> "The Court therefore finds in favor of [Ehdaie] on [Ehdaie's] 4th, 5th, and 9th causes of action."

With respect to damages for assault, battery, and infliction of emotional distress, the court found that Ehdaie had failed to prove any economic damages. However, the trial court awarded Ehdaie $12,500 in compensatory damages for pain and suffering and an additional $12,500 in punitive damages, for a total award of $25,000.

4. *The judgment*

The trial court entered a judgment in accordance with its statement of decision in February 2018.

5. *The appeal*

Ehdaie timely appeals from the judgment.

6. *The trial court's settled statement*

While this appeal was pending, the trial court certified a settled statement. (See Cal. Rules of Court, rule 8.137.)

---

5    The trial court declared that Ehdaie was the exclusive owner of a dog named "Simba."

III.

DISCUSSION

A. *The trial court did not abuse its discretion in excluding evidence of Stewart's alleged physical abuse of three other women*

Ehdaie claims that the trial court erred in excluding evidence of Stewart's alleged physical abuse of three other women. Ehdaie claims that the evidence was admissible pursuant to Evidence Code section 1101, subdivision (b) to prove Stewart's "motive, . . . intent, and the patterns of long[-]term abuse."

We review the trial court's ruling for an abuse of discretion. (*Brinkley v. Monterey Financial Services, Inc.* (2015) 242 Cal.App.4th 314, 336 [stating that the abuse of discretion standard of review applies to evidentiary rulings].)

1. *Factual and procedural background*

Prior to the trial, Stewart filed a motion in limine to exclude evidence of his commission "of assault or battery . . . against persons other than [Ehdaie]." In his motion, Stewart conceded that Ehdaie could prove her causes of action for battery, assault, and intentional infliction of emotional distress based on his conviction for the October 4, 2015 battery of Ehdaie. Stewart argued that evidence of his alleged commission of domestic violence on persons other than Ehdaie was irrelevant and more prejudicial than probative. In addition, Stewart maintained that presenting such evidence would require an undue consumption of time, and that, to the extent Ehdaie sought to introduce "court filings in connection with restraining orders unrelated to [Ehdaie]," (boldface omitted), such evidence constituted inadmissible hearsay.

Ehdaie filed an opposition to Stewart's motion in limine in which she stated that evidence of "prior domestic violence restraining orders" was not being offered to prove Stewart's disposition to commit the acts described therein but rather, to prove that Stewart had "deliberately failed to provide [Ehdaie] with knowledge she needed to make an informed decision whether to fall in love with [Stewart] and leave her father's home to move in with [Stewart]."[6] Ehdaie argued further that the evidence went "to the credibility and [i]ntent issue of the [f]raud cause of action [*sic*]." Ehdaie also maintained that the evidence was relevant "to prove [Stewart's] motive or plan."

The trial court granted Stewart's motion in limine. In its settled statement, the court described its reasoning for granting the motion in limine as follows:

> "Mr. Stewart filed a motion in limine to exclude evidence of domestic violence that took place prior to the time he met Ms. Ehdaie on the basis that the evidence was irrelevant, more prejudicial than probative, and inadmissible on hearsay grounds. The Court granted this motion because the evidence was irrelevant given that the alleged incidents took place prior to the time Mr. Stewart even met Ms. Ehdaie, and the evidence was extremely prejudicial with minimal probative value.
>
> "Mr. Stewart suffered a misdemeanor conviction for battery on Ms. Ehdaie, such that Mr. Stewart's liability for the battery claim was conclusively established. Ms. Ehdaie sought to introduce hearsay evidence in the form of written statements to prove Mr. Stewart had committed domestic violence on other women prior to meeting Ms. Ehdaie. But Ms. Ehdaie had no witnesses available to testify to the same."

---

6    In her trial brief, Ehdaie also stated that Stewart "failed to tell Ms. Ehdaie that his former wife and two previous girlfriends had all gotten [d]omestic [v]iolence protective orders against Mr. Stewart because of his character trait for violence against women."

2. *Relevant law*

" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) "Except as provided by law, hearsay evidence is inadmissible." (*Id.*, subd. (b).)

Evidence Code section 1101 pertains to the admissibility of evidence of a defendant's character and provides in relevant part:

> "(a) . . . [E]vidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

> "(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

> "(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

Evidence Code section 352 authorizes a trial court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

10

Evidence Code section 354 precludes the reversal of a judgment based on the exclusion of evidence under the following circumstances:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that:
>
> "(a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means;
>
> "(b) The rulings of the court made compliance with subdivision (a) futile; or
>
> "(c) The evidence was sought by questions asked during cross-examination or recross-examination."

A judgment may not be reversed in a civil case based on "the improper . . . rejection of evidence, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

3. *Application*

Ehdaie fails to establish that the trial court abused its discretion in excluding evidence of Stewart's alleged commission of physical abuse against three other women. To begin with, Ehdaie has not established that any of the three women were available to testify or that it was improper to exclude hearsay evidence pertaining to the alleged acts of abuse.[7] In addition, given

_____

[7] While Ehdaie asserts in her brief that the trial judge "issued a warrant for one of the witnesses," she fails to provide any citation in the record to support this assertion, and she does not point to any evidence demonstrating

11

that Ehdaie fails to point to an offer of proof or anything in the record demonstrating the precise nature of the evidence excluded,[8] it is clear that Ehdaie has established neither error nor prejudice.  (Cal. Const., art. VI, § 13; Evid. Code, § 354.)

B.  *Ehdaie fails to establish any prejudice resulting from the trial court's quashing of her subpoena requiring Stewart to appear as a witness at trial*

Ehdaie contends that the trial court erred in quashing her subpoena requiring Stewart to appear as a witness at trial.

1.  *Factual and procedural background*

The November 27, 2017 Joint Trial Conference Report listed Stewart as a witness for both the Plaintiff and the Defendant.

Stewart was present in court on December 1 for a settlement conference and on December 4 for the first day of the trial.

On December 5, Ehdaie served Stewart with a subpoena ordering him to appear on December 11 as a witness in the action.  The subpoena also directed Stewart to produce ten categories of financial documents, which the subpoena indicated were relevant to the proof of punitive damages.

The trial court held a telephonic conference on December 8.  The minute order from the hearing indicates that the conference lasted five minutes and states in relevant part:

> "The Court hears a telephone conference with counsel at [Stewart's] request.  Court and counsel confer regarding service of subpoena upon [Stewart].  The Court finds that

that either of the other witnesses was available to testify.  Ehdaie also presents no argument on appeal as to the admissibility of hearsay evidence of the prior incidents of alleged abuse.

[8] The "prior domestic violence restraining orders" that Ehdaie referred to in her opposition to the motion in limine are not in the record on appeal.

12

the issuance of the subpoena is untimely.  [Stewart's] oral motion to quash the subpoena is granted."

The settled statement states the following with respect to the trial court's quashing of the subpoena:

> "On December 5, 2017, which was after the date set for trial, Plaintiff served Mr. Stewart with a Civil Subpoena for Personal Appearance at 9:00 am, December 11, 2017 at the trial in this matter.  Mr. Stewart moved to quash the subpoena.  The Court found that the subpoena was untimely and did not enforce compliance with the subpoena."

2. *Law governing an appellant's burden to demonstrate prejudice from the quashing of a subpoena*

An appellant seeking reversal of a judgment based on the quashing of a subpoena must demonstrate a reasonable probability of a more favorable result but for the trial court's asserted error.  (*People v. Pierce* (2019) 38 Cal.App.5th 321, 340 (*Pierce*) [applying reasonable probability standard of prejudice to appellant's claim that trial court erred in quashing subpoena]; *People v. Roberts* (1992) 2 Cal.4th 271, 302 [stating that "[t]he court . . . erred when it quashed the subpoena," but concluding there was "no prejudice" from the error because it was not "reasonably probable," that defendant would have obtained a more favorable result but for the error].)  An appellant fails to make such a showing by contending that the extent of the trial court's error in quashing a subpoena "cannot be 'currently ascertained.' " (*Pierce,* at p. 340.)

These authorities are consistent with the rule discussed in part III.A, *ante*, requiring that an appellant seeking reversal based on a ruling excluding evidence demonstrate prejudice.  (Cal. Const., art. VI, § 13; Evid. Code, § 354; see also *IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 655

13

[rejecting evidentiary claim because appellant "offers no argument that the erroneous admission of this evidence was so prejudicial that reversal is required"]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282 [rejecting claim that trial court committed reversible error in excluding evidence because appellants "fail to demonstrate how any claim of error in the trial court's exclusion of evidence would have made any difference in the outcome"].)

    3. *Application*

    We assume, solely for purposes of this opinion, that the trial court erred in quashing Ehdaie's subpoena requiring Stewart to appear as a witness at trial. The totality of Ehdaie's argument as to the prejudice that she suffered from the trial court's quashing of the subpoena in her brief on appeal is the following:

> "Given the court's ruling, [Ehdaie] was left with reading the limited portions of Gary Stewart's deposition where he responded to a question. There was no way to assess [Stewart's] credibility or properly resolve the 'he said/ she said' issues in this case.
>
> "It is obvious from the Statement of Decision that [Ehdaie] made a poor impression on the Court. It is unknown and a matter of unfairness to assume that Stewart wouldn't have made an even lesser impression had he been cross examined."

    In presenting this argument, Ehdaie has failed to demonstrate prejudice. Ehdaie's suggestion that she would have obtained a more favorable result if Stewart had testified at trial in lieu of Ehdaie presenting unspecified portions of Stewart's deposition, does not establish prejudice. Nor does Ehdaie demonstrate prejudice by arguing that it is "unknown,"

14

whether Stewart would have "made an even lesser impression," than Ehdaie did, if Stewart had testified at trial. (See *Pierce, supra*, 38 Cal.App.5th at p. 340.)

Accordingly, we conclude that Ehdaie has failed to establish prejudice stemming from the trial court's quashing of her subpoena requiring Stewart to appear as a witness at trial.

C. *Ehdaie has not demonstrated that the trial court "set improper standards" when considering her contract causes of action, "displayed bias" against her, or "improperly handled" the settled statement*

Ehdaie contends that the trial court "set improper standards" when considering her contract causes of action, "displayed bias" against her, and "improperly handled" the settled statement. We consider each argument in turn.

Ehdaie first contends that the trial court erred in its determination of her contract causes of action. Specifically, she asserts that the trial court treated handwritten notes from Stewart to Ehdaie, referred to in part II.A. *ante*, as "the sum total of the oral promises," rather than as "corroborating evidence" of "oral or implied contracts," between Stewart and Ehdaie.

We are unpersuaded. The trial court's statement of decision sets out the elements of a breach of contract cause of action and states, "There is little credible evidence that the parties in this case entered into any actual contract, express, implied, written, or oral." Thus, the court considered whether Ehdaie had established the existence of any type of contract. In addition, the trial court's settled statement describes Ehdaie's testimony in detail, including her testimony surrounding Stewart's alleged contractual promises. Ehdaie fails to demonstrate how the trial utilized any "improper standards" for the adjudication of her contract causes of action in either the court's statement of decision or its settled statement.

15

Ehdaie also argues that the trial court "displayed bias" against her. In *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570 (*Schmidt*), the Court of Appeal outlined the law governing an appellate court's review of claims of judicial bias:

> "It is 'extraordinary' for an appellate court to find judicial bias amounting to a due process violation. [Citation.] The appellate court's role is not to examine whether the trial judge's behavior left something to be desired, or whether some comments would have been better left unsaid, but to determine whether the judge's behavior was so prejudicial it denied the party a fair, as opposed to a perfect, trial. [Citation.] Mere expressions of opinion, based on observation of the witnesses and evidence, do not demonstrate judicial bias. [Citation.] Numerous and continuous rulings against a party are not grounds for a finding of bias. [Citation.]" (*Id.* at p. 589.)

In support of her claim of judicial bias, Ehdaie cites the following statements from the trial court's statement of decision:

> " '[1.] She simply went from not working and living for free with her father to not working and living for free with Mr. Stewart, but with more freedom than she had with her father and no curfew.'
>
> " '[2.] Apparently Stewart did not like it when Ehdaie would leave him and he did not want her to leave. In order to get her to return to his home or to prevent her from leaving Stewart would sign written notes at her request.'
>
> " '[3.] Exhibits 1 and 4 written by Stewart again at Plaintiff's insistence on December 11, 2010, and October 8, 2011 respectively reference Stewart 'wanting' to put Ehdaie on title to the house are also no[t] evidence of a contract. Wanting to do something is not the same as promising to do something'

16

" '[4.] Although Ehdaie may have believed she had a contract with Stewart it was not objectively reasonable for her to believe this'

" '[5.] In addition, any contract Plaintiff claims exists in this case fails for lack of consideration. What did Ehdaie give up of value for this promise of lifetime support? Virtually nothing.' " (Italics omitted.)

None of these statements, whether considered individually or collectively, demonstrates bias. Statements 2, 3, and 4 are neutral assessments of the evidence. While statements 1 and 5 might be characterized as condescending, the trial court was required to evaluate Ehdaie's testimony and evidence; the court's statements fall far short of demonstrating bias. (See *Schmidt, supra*, 44 Cal.App.5th at p. 589.) This is particularly true given that that the court similarly characterized Stewart in unflattering terms. For example, the trial court noted in its statement of decision that Stewart "used cocaine" and that he had "injured" Ehdaie. The court also stated in its settled statement that, "During 2012 and 2013, Mr. Stewart continued with bizarre behavior and false accusations against Ms. Ehdaie." The statement of decision describes both Ehdaie *and* Stewart as "very troubled individuals," who "had substance abuse problems." Further, the court awarded Ehdaie both compensatory and punitive damages, notwithstanding its finding that Ehdaie had not suffered any economic damages. In sum, the record does not demonstrate that the trial court displayed bias toward Ehdaie.

Finally, Ehdaie contends that the trial "improperly handled" the settled statement. In support of this contention, Ehdaie notes that the trial court adopted Stewart's proposed settled statement and implicitly rejected Ehdaie's objections to Stewart's proposed settled statement. Ehdaie argues, "How

17

could it be that in every single one of the numerous disagreements [Ehdaie] was wrong in [her] recollection and the defendant was correct in each and every point?" However, Ehdaie fails to identify any instance in which the trial court's settled statement is incorrect and she does not contend that the court failed to comply with any specific provision of California Rules of Court, rule 8.137 governing settled statements. Further, Ehdaie does not otherwise demonstrate that the trial court "improperly handled" the settled statement proceedings. Accordingly, we conclude that Ehdaie is not entitled to reversal of the judgment due to the trial court's alleged error in the manner by which it certified its settled statement.

D. *Ehdaie's claims of inadequate damages are barred by her failure to move for a new trial on this ground in the trial court*

Ehdaie claims that the trial court's compensatory award of $12,500, and the court's punitive damages award in the same amount are inadequate.

1. *Governing law*

The failure to move for a new trial on the ground that damages are inadequate ordinarily "precludes a party from complaining on appeal that the damages awarded were either excessive or inadequate, whether the case was tried by a jury or a court without a jury." (*Glendale Federal Savings & Loan Assn. v. Marina View Heights Development Co.* (1977) 66 Cal.App.3d 101, 122 (*Glendale Federal*).) The *Glendale Federal* court explained the basis for this rule in part as follows:

> "[T]he power to weigh the evidence and resolve issues of credibility is vested in the trial court, not the reviewing court. [Citation.] Consequently, where the ascertainment of the amount of damage requires resolution of conflicts in the evidence or depends on the credibility of witnesses, the award may not be challenged for inadequacy or excessiveness for the first time on appeal. To permit a party to do so without a motion for new trial would

18

unnecessarily burden reviewing courts with issues which can and should be resolved at the trial court level." (*Ibid.*)

2. *Application*

With respect to the compensatory damages award, Ehdaie claims that the court "disregarded" evidence pertaining to compensatory damages "due to [Stewart's] objection to lack of foundation," and that the trial court gave "no consideration," to the length of the parties' relationship and their difference in age.[9] With respect to the punitive damages award, Ehdaie asserts that the court's punitive damages award provided inadequate deterrence given Stewart's net worth. In sum, Ehdaie contends that the trial court erred in its weighing of the evidence pertaining to damages.

However, there is nothing in either the briefing or in the record on appeal demonstrating that Ehdaie filed a motion for new trial on the ground of inadequacy of the damages that the trial court awarded. Because Ehdaie's claims of inadequacy of damages depend on the trial court's weighing of the evidence, they are barred by her failure to move for a new trial on the basis of inadequacy of the damages awarded. (See *Glendale Federal, supra*, 66 Cal.App.3d at p. 122.)

---

[9] Ehdaie fails to properly cite to *any* evidence or rulings in the record with respect to these issues.

IV.

DISPOSITION

The judgment is affirmed.  Ehdaie is to bear costs on appeal.


AARON, J.

WE CONCUR:


HALLER, Acting P. J.


IRION, J.